**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Holder, | CV 09-1226-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Mercury Casualty Company et al., | |
| Defendants. | |

Pending before the Court are Defendant Mercury Casualty Company's ("Mercury") Motion for Summary Judgment (doc. #23) and Plaintiff Christopher Holder's Cross Motion for Summary Judgment (doc. #25).

**I.  Undisputed Facts**

On September 22, 2005, Zachary Brais rear-ended Christopher Holder in the northbound lanes of State Route 51. Brais was driving a 2004 Ford Taurus owned by his employer, Sonoran MRI, LLC, and was transporting MRI's and X-rays as part of his job.[1] The car driven by Brais was insured by his employer through an insurance policy issued by American Family Insurance Co, with a per-person liability limit of $100,000. American Family eventually tendered the policy limit to Holder.

---

[1] The parties have stipulated that Brais was acting within the scope and course of his employment when the accident occurred.

At the time of the accident, Sylvia Brais, Zachary Brais's mother, maintained an automobile insurance policy--the subject of this dispute--with Mercury ("Mercury Policy.") Zachary Brais was an insured under the Mercury Policy. The per person liability limit under the Mercury Policy was $100,000, and the policy listed as covered vehicles a 1999 Toyota Corolla, a 2004 Nissan Xterra, and a 1992 Nissan Stanza.

In addition, the Mercury Policy contained the following provisions (hereinafter "Commercial Purposes Exclusion"):

> Coverage under this Part I, including our duty to defend, does not apply to:
>
> 1. Bodily Injury or Property Damage arising out of the ownership, maintenance, or use of a vehicle while being used for commercial purposes.
> *****
> Commercial purposes means the transportation of persons or property in the business of any insured, or for hire, compensation, or profit. This includes, but is not limited to, delivery of magazines, newspapers, food or any other product.

On February 20, 2007, Holder sued Brais and Sonoran MRI, LLC for injuries sustained from the accident. Mercury denied coverage to Brais on July 31, 2008, relying on the Commercial Purposes Exclusion. On October, 2008 Holder entered into a Damron Agreement with Brais and Sonoran MRI, LLC, whereby Brais stipulated to judgment being entered against him, and Brais and Sonoran MRI, LLC assigned to Holder all of Brais's rights under the Mercury Policy. In exchange, Holder agreed not to take any further action for additional damages arising out of the accident against Brais and Sonoran MRI, LLC.

## II.  Standard of Review

Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court presumes that the nonmoving party's

evidence is true and draws all inferences from the evidence in favor of the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**III. Analysis**

    **A. Construction of Commercial Purposes Exclusion**

        **1. General Principles of Insurance Contract Interpretation**

Under Arizona insurance law, insurance policy provisions are interpreted according to their ordinary meaning. *Cal. Cas. Ins. Co. v. Am. Family Mut. Ins.,* 208 Ariz. 416,418, 94 P.3d 616, 618 (App. 2004). If a clause is susceptible to different interpretations, courts should "first attempt to discern the meaning of the clause 'by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole.'" *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct. App. 2000) (quoting *Ohio Cas. Ins. Co. v. Henderson*, 189 Ariz. 184, 186, 939 P.2d 1337, 1339 (1997)). "If ambiguity remains after considering these factors, ambiguous provisions are construed against the insurer." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 218 Ariz. 394, 397, 187 P.3d 1107, 1110 (2008). Where, however, undefined terms are given their ordinary meaning and

exclusion of benefits results, language will not be treated as ambiguous. *Farmers Ins. Exch. v. Loesche*, 17 Ariz. App. 421, 424, 498 P.2d 495, 498 (Ct. App. 1972).

### 2. Background Re Commercial and Business Purposes Exclusions

"It has long been recognized that the risks of using an automobile to be covered under an automobile liability insurance policy may be defined in terms of the business of the insured, or by some other reference to the specific use by the insured." 8A G. Couch, Cyclopedia of Insurance Law § 120:1 (3d ed. 2005). Historically, the insured's business has been used as a reference point for ascertaining risk because: (1) many business uses present significantly different risks than personal uses; (2) the insurer can assess the risk involved by reference to past history for a given type of business; and (3) the insurer can, with relative ease, distinguish business uses from personal uses. *Id.*

When a policy purports to provide coverage for a vehicle used for business or commercial purposes, distinctions among business uses are relevant because the risk associated with the use of a vehicle varies across different businesses. *See id.* In contrast, where a policy contains a provision excluding use for business or commercial purposes, the character of the use, whether for business or personal pursuits, is relevant. *See Farmers Ins. Exch. v. Loesche*, 17 Ariz. App. 421, 498 P.2d 495 (Ct. App. 1972). The use of a vehicle for business pursuits presents a higher risk to the insurer than personal uses. Where an insured increases the risk to the insurer without the insurer's consent, coverage will generally be found to be lacking. 8A G. Couch, Cyclopedia of Insurance Law § 120:24.

### 3. Interpretation of Mercury's Commercial Purposes Exclusion

Holder contends that the Commercial Purposes Exclusion in the Mercury Policy does not apply because Brais was not operating a vehicle "in the business of any insured," but rather was operating the vehicle in the business of his employer, Sonoran MRI, LLC. Holder arrives at this interpretation by applying the last antecedent rule, which "requires that a qualifying phrase be applied to the word or phrase immediately preceding as long

as there is no contrary intent indicated," to the text of the exclusion. *See Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.*, 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990). Holder argues that the phrase "or for hire, compensation or profit" modifies the immediately preceding phrase "in the business of any insured," and therefore coverage is excluded only if an insured is transporting people or property in the business of, or for hire by, or for compensation from, or for the profit *of any insured*.

Holder's interpretation strains the ordinary construction of the words in the provision. The word "or" separates the clause "transportation of persons or property in the business of any insured," from the clause "for hire, compensation or profit." Considering the sentence as a whole, the most apparent construction is that there is no coverage when the vehicle is used either in the insured's business, or when it is used for hire, compensation, or for profit. Holder, however, contends that the specific examples of property that may be transported in the business of an insured, such as magazines, newspapers, and pizza, indicate that the purpose of the exclusion is to deny coverage only when an insured uses his own vehicle while in the course of his own business pursuits.[2] Thus, Holder argues that the exclusion would apply to the newspaper boy, the pizza delivery guy, or the Mary Kay lady, but not to a person delivering products while in the course of his employment for a non-insured. However, if that were the case, the phrase "or for hire, compensation, or profit," would be rendered meaningless. If Holder's

---

[2] From these examples, Holder also draws the inference that coverage is excluded only when an insured uses *his own vehicle* for commercial purposes. The parties have not provided the Court with a copy of the policy, and therefore the Court cannot make this determination. However, the Commercial Purposes Exclusion does not appear to distinguish between owned and non-owned vehicles. The relevant provision quoted by the parties simply states, "arising out of the ownership, maintenance, or use *of a vehicle* while being used for commercial purposes." Further, Holder's interpretation would lead to the strange result that an insured would not be covered when engaging in business pursuits in a vehicle specifically named in the policy, but would be covered when engaging in business pursuits in a vehicle not specifically designated as covered under the policy.

- 5 -

construction had been intended, the policy would simply state, "transportation of persons or property in the business of any insured." The words of the entire provision should be given effect and not, as Holder's construction would entail, read out of the policy. *See Phoenix Control Sys.*, 165 Ariz. at 34, 796 P.2d at 466 (noting in the context of a dispute over the interpretation of an insurance policy that, "[t]he last antecedent rule will not apply where its application would render the rest of the statute at issue merely surplusage, and where more important rules of construction, such as giving effect to every part of the statute are applicable."). Regularly transporting MRI's for hire clearly falls under Mercury's Commercial Purposes Exclusion.

Even if Holder's interpretation were adopted and the policy were read to exclude coverage only when an insured is engaged in his own business pursuits, where a policy contains an exclusion for vehicles while used by any person while such person is employed or otherwise engaged in any business of the insured, the term "business of the insured" does not necessarily refer only to those businesses that are owned or controlled by the insured. *Royal Globe Ins. Cos. v. Fletcher*, 123 N.H. 189, 193-94, 459 A.2d 255, 258-59 (1983). The exclusion can also apply when the insured is utilizing a non-owned vehicle in connection with his occupation as an employee of a non-insured. *See Farmers Ins. Exch. v. Loesche*, 17 Ariz. App. 421, 498 P.2d 495 (Ct. App. 1972) (looking to the character of the use of the vehicle and holding that a vehicle owned and controlled by an employer and used exclusively for company business was a commercial vehicle and therefore excluded from coverage under the plaintiff's personal automobile liability policy); *Fletcher,* 123 N.H. at 193-94; 459 A.2d at 258-59 (no coverage where plaintiff's personal liability policy excluded coverage for liability "arising out of business pursuits of any insured," and plaintiff was using a non-owned tractor in connection with his occupation as an employee of a non-insured); *Essary v. Hartford Accident & Indem. Co.*, 346 F.2d 61, 61-64 (6th Cir. 1965) (no coverage where plaintiff's personal liability policy excluded coverage for non-owned vehicles while used "in any other business or

occupation of the insured," and plaintiff at the time of the accident was gathering hay and expecting repayment from non-insured). Holder has admitted that Brais was utilizing his employer's vehicle to deliver his employer's products when the accident occurred. The Commercial Purposes Exclusion therefore applies even if Holder's construction of the exclusion were adopted.

Contrary to Holder's contention, construing the policy to exclude coverage when a vehicle is used for commercial purposes does not eviscerate all coverage. Distinctions between commercial and personal uses are common in automobile liability policies because "[t]he use of a car for commercial activities . . . increases the risk of an accident beyond that usually anticipated in the private use of a passenger car." *Ill. Farmers Ins. Co. v. Eull*, 594 N.W.2d 559, 562 (Minn. Ct. App. 1999). "One would expect a personal umbrella policy to give more protection to personal risks than to business risks. One would also expect a significant premium increase if business risks were included in the policy." *State Farm Fire and Cas. Ins. Co. v. First Nat'l Bank of Madison County*, 969 F.2d 521, 524-25 (7th Cir. 1992). Construing the policy to cover Brais while he was delivering products in the course of his employment would increase the risk to Mercury greatly beyond that which it assumed when it issued the Brais' personal automobile liability policy. While it may be difficult, in some cases, to distinguish between personal and commercial uses of a vehicle, that is not the case where, as here, an insured regularly uses his employer's vehicle to transport his employer's products as part of his job.

Finally, while insurance policies will be construed to protect the reasonable expectations of the insured, *Phoenix Control Systems*, 165 Ariz. at 34, 796 P.2d at 466, it would not have been reasonable for Brais to expect coverage, under a personal automobile liability policy, when using his employer's vehicle to deliver products on behalf of his employer. *See Eull,* 594 N.W.2d at 561-62 (holding that it was beyond the reasonable expectations of private vehicle policyholders to expect coverage for a commercial use of a vehicle that entailed delivering pizzas for about twenty-five to thirty

hours per week). The Mercury Policy's Commercial Purposes Exclusion therefore applies here.

### B. Arizona's Financial Responsibility Act

Holder nevertheless contends that Arizona's Financial Responsibility Act requires Mercury to afford the state minimum coverage of $15,000 because, unless permitted by statute, exclusionary clauses in basic motor vehicle policies are void as against public policy with respect to minimum coverage requirements. *Philadelphia Indem. Ins. Co. v. Barerra*, 200 Ariz 9, 12, 21 P.3d 395, 398 (2001). The permissible exclusions under the Financial Responsibility Act are listed in subsection (C)(4). A.R.S. § 28-4009(C)(4). However, whether an exclusion is permissible under subsection (C)(4), is irrelevant if coverage is not required under subsections (A) or (B) in the first place. *Farmers Ins. v. Young*, 195 Ariz. 22, 25, 985 P.2d 507, 510 (Ct. App. 1998).

Arizona distinguishes between owner's and operator's policies. *Farmers Ins.,* 195 Ariz. at 24, 985 P.2d at 509. "An owner's policy insures the owner of a specified vehicle against liability arising out of its use, while an operator's policy insures the person in the act of operating any non[-]owned motor vehicle." *Id.* Subsection (A) of the Financial Responsibility Act imposes requirements on owner's policies, mandating that an owner's policy to "designate by explicit description or by appropriate reference all motor vehicles" covered. A.R.S. § 28-4009(A). Subsection (B) applies to operators' policies and requires coverage for "the person named as insured." A.R.S. § 28-4009(B).

Neither subsection (A) nor subsection (B) require Mercury to provide coverage. The Mercury Policy specifically lists as covered vehicles a 1999 Toyota Corolla, a 2004 Nissan Xterra, and a 1992 Nissan Stanza, and is therefore an owner's policy. *Farmers Ins.,* 195 Ariz. at 24, 985 P.2d at 509 (a policy that specifically covers a vehicle is an owner's policy). Subsection (B) only applies to operators' policies, and is therefore inapplicable. Subsection (A) also does not apply because subsection (A) does not require coverage of a vehicle not specifically described or referred to in the insured's policy, and

the Ford Taurus that Brais was driving was not specifically mentioned in the Mercury Policy. *See id.* at 25, 985 P.2d at 510. Holder's contention that the Financial Responsibility Act requires Mercury to provide the minimum statutory coverage therefore fails.

### C. Reasonable Expectations Doctrine

Lastly, Holder contends that the reasonable expectations doctrine bars application of the Commercial Purposes Exclusion. Under that doctrine, unambiguous boilerplate terms of an insurance policy cannot apply in four limited situations:

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;
>
> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier v. Aetna Cas. & Sur. Co.*, 154 Ariz. 266, 273, 742 P.2d 277, 284 (1987).

Holder contends that there is a genuine issue of material fact as to whether the third and fourth *Gordinier* tests apply. Mercury sent several letters to Brais indicating that it was investigating coverage based upon the Commercial Purposes Exclusion. The letters dated April 8, 2008, April 9, 2008, and April 29, 2008, all stated that Mercury was investigating the exclusion. The last letter requested an interview with Brais to investigate the exclusion, and the interview was conducted on May 7, 2008. On June 3, 2008, Mercury requested another interview with Brais and his parents, this time to determine his residency at the time of the collision. That request made no mention of the Commercial Purposes Exclusion. The interview was conducted on June 9, 2008. On July

15, 2008, Mercury sent another letter stating that it was still investigating coverage. Mercury denied coverage based on the Commercial Purposes Exclusion on July 31, 2008.

Holder's attempt to fit within the third and fourth *Gordinier* tests fails in every respect. First, the communications about investigating exclusions occurred after the contract was formed and after the claim arose, so they could not bear upon the fair meaning the insured had in making or renewing the insurance contract. Indeed, Holder argues only that this sequence of letters led him to believe that Mercury dropped its Commercial Purposes Exclusion defense. That is a waiver argument, not a reasonable expectations argument.

Second, regardless of how the argument is characterized, the investigation of exclusions, including the Commercial Purposes Exclusion, could not reasonably lead anyone to believe that Mercury dropped its Commercial Purposes Exclusion defense. Three of the letters stated that Mercury was specifically investigating whether the Commercial Purposes Exclusion applied. The fact that Mercury was also investigating Brais's residency, in addition to the Commercial Purposes Exclusion, could not rationally lead Brais to believe that Mercury was silently dropping that very exclusion. The reasonable expectations doctrine, therefore, cannot bind Mercury to provide coverage that it expressly excluded.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (doc. #23) is Granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (doc. #25) is Denied.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant Mercury Casualty Company and that Plaintiff Christopher Holder take nothing. The Clerk shall terminate this case.

DATED this 1st day of February, 2010.

_____
Neil V. Wake
United States District Judge